UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

TABARI S STRONG, *et al*,             §
                                      §
          Plaintiffs,                 §
VS.                                   §          CIVIL ACTION NO. 2:12-CV-106
                                      §
BRAD LIVINGSTON, *et al*,             §
                                      §
          Defendants.                 §

## MEMORANDUM AND RECOMMENDATION ON PENDING MOTIONS

Plaintiff, a Muslim prisoner incarcerated at the TDCJ's McConnell Unit in Beeville, Texas, filed this lawsuit alleging that the TDCJ's grooming policy requiring all inmates to be clean-shaven violates his statutory rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-2(a).  (See D.E. 1).  He also claimed that the policy violated his right to exercise his religion under the First Amendment, and that enforcement of the policy violated his right to equal protection under the Fourteenth Amendment.  Id.

Pending are the following motions: plaintiff's motion for summary judgment (D.E. 31), to which defendants have filed a response in opposition (D.E. 36, 37); defendants' motion for partial dismissal (D.E. 34), to which plaintiff objects (D.E. 46); and plaintiff's amended motions for a preliminary injunction (D.E. 52, 54), to which defendants have responded.  (D.E. 53).   For the reasons stated herein, it is respectfully recommended that the Court: (1) deny plaintiff's motion for summary judgment: (2) grant defendants'

1 / 20

motion for partial dismissal; and (3) grant in part, and deny in part, plaintiff's motions for a preliminary injunction.

## I.      Jurisdiction.

The Court has federal question jurisdiction pursuant to 28 U.S.C. §1331.

## II.     Procedural background and positions of the parties.

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Divisions ("TDCJ-CID"), and is currently confined at the McConnell Unit in Beeville, Texas.  On April 12, 2012, plaintiff filed his original complaint alleging that the TDCJ-CID's grooming policy requiring inmates to be clean-shaven violates his statutory and constitutional rights.  (D.E. 1).  He also alleged that certain prison officers and officials harassed and retaliated against him because of his religious beliefs, in violation of his right to equal protection under the Fourteenth Amendment.  Id. at 3.  He named the following individuals as defendants: (1) Brad Livingston, TDCJ Executive Director; (2) Eileen Kennedy, Region IV Director; Lorie Davis, McConnell Unit warden; Sergeant Larissa Wysocki; and Captain C. Benavidez.  Id. at 4.  Plaintiff also moved for a temporary restraining order ("TRO") that he be permitted to wear a quarter-inch beard based on a May 2011 decision out of this Court that the TDCJ's grooming policy imposed a substantial burden on a Muslim prisoner's exercise of his faith, and that the TDCJ had failed to established that its grooming policy was the least restrictive means of

enforcing the legitimate penological interests of institutional safety and security.[1]  (D.E. 3).

A Spears[2] hearing was held on May 15, 2012, following which, service was ordered on the named defendants.  (D.E. 11).  On June 29, 2012, the named defendants filed their Answer (D.E. 12), and responded to plaintiff's TRO motion.   (D.E. 13).  Defendants argued, *inter alia*, that plaintiff could not establish a likelihood of success on the merits of his claims because the TDCJ had appealed the Garner decision and it was then pending before the Fifth Circuit in Garner v. Gutierrez, No. 11-40653.  (D.E. 13 at 3).  Defendants requested that the action be abated until the Fifth Circuit issued its decision in the Garner appeal.  (D.E. 14).

On August 13, 2012, the Court dismissed plaintiff's free exercise claims and stayed the case as to his RLUIPA claims pending the decision in Garner.  (D.E. 16).  The Court denied without prejudice plaintiff's request for a TRO.  Id. at 2.

By Opinion dated April 2, 2013, the Fifth Circuit concluded that the TDCJ's grooming policy prohibiting Garner from wearing a quarter-inch beard violated RLUIPA.  See Garner v. Gutierrez, 713 F.3d 237, 247 (5th Cir. 2013).  The TDCJ did not further appeal the Garner decision.

---

[1] Plaintiff was referring to Garner v. Livingston, Case No. 2:06-cv-218.  The case was tried to the bench in January 2011, and on May 19, 2011, Judge Hudspeth found in favor of plaintiff Garner and ordered the TDCJ enjoined from enforcing its grooming policy, effectively allowing Garner to maintain a quarter-inch beard.  Id. at D.E. 153.

[2] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985).

On April 3, 2013, the Court lifted the stay allowing this case to proceed.  (D.E.

17).

On April 13, 2013, McConnell Unit Assistant Warden C.E. Monroe issued an

inter-office communication ("IOC") to the McConnell Unit staff concerning the Garner

decision and plaintiff's claims in this lawsuit.  The IOC provides as follows:

> This IOC in intended to remind and/or inform all staff at the
> William G. McConnell Unit that offender Strong, Tabari
> TDCJ # 1689849 has been awarded a court order granting
> him the right to grow his beard ¼ inch in length.
>
> **Do Not** write him a disciplinary offense for failure to groom
> his beard.
>
> **Do Not** judge the length of his beard to ensure compliance
> with this directive.
>
> Failure to comply with this directive may result in employee
> disciplinary actions.
>
> If you have any questions regarding the contents of this IOC
> or any other matter relating to Offender Strong, Tabari #
> 1689849 and his beard please call the warden's office.

(D.E. 31 at 5, PX-A, emphasis in original).

On May 24, 2013, plaintiff filed a pleading entitled "facts and statements" in

which he alleged that, since the lifting of the stay, he had been permitted to wear a

quarter-inch beard; however, he claimed that unidentified officers were "harassing" him

by (1) denying him lay-in passes to attend religious services, and (2) housing him in a

cell with no cold water.  (D.E. 19).  He claimed that he advised Risk Management Officer

Smith of these events, but that Officer Smith had ignored plaintiff's I-60's and

grievances.  Id.

On August 19, 2013, plaintiff filed the instant motion for summary judgment. (D.E. 31). Plaintiff states that, prior to the <u>Garner</u> decision, he was subjected to multiple disciplinary cases for wearing a beard and/or refusing to shave in violation of RLUIPA, such that he is entitled to judgment in his favor. Defendants oppose the motion. (D.E. 36).

On August 29, 2013, defendants filed a motion for partial dismissal on the grounds that plaintiff's claims against the individual defendants in their official capacities are barred by the Eleventh Amendment, and that plaintiff cannot maintain RLUIPA claims against defendants in their individual capacities because RLUIPA does not permit such claims; only the state entity that receives federal funding, not individuals, is subject to RLUIPA liability. (D.E. 34). In addition, defendants move to dismiss plaintiff's equal protection claim on the grounds that he fails to allege how he was treated differently from any similarly situated group in the application of the grooming policy. (D.E. 34 at 3-4). Plaintiff opposes dismissal of his equal protection claim. (D.E. 46).

On September 27, 2013, plaintiff filed an amended motion for a preliminary injunction. (D.E. 52). Plaintiff requests that the Court order Lieutenant Miles, Sergeant Dupnik, and Lieutenant Boyer to comply with the April 13, 2013 directive from Assistant Warden Monroe to the McConnell Unit staff authorizing plaintiff to wear a quarter-inch beard and to not give him a disciplinary case for failure to groom his beard. (D.E. 52 at 3). In addition, plaintiff asks that the Court enjoin Candace Moore, the McConnell Unit law librarian, from denying him access to the courts, and to enjoin Ms. Lingbergh from retaliatory acts. <u>Id.</u> at 4. Finally, he requests that the Court "explore" his request to wear

a "fist-length" beard.  Id. at 1.  Defendants object to plaintiff's preliminary injunction request on the grounds that plaintiff is now seeking relief against individuals not a party to this lawsuit, and that his request for a fist-length beard goes beyond the relief sought in his original complaint.  (D.E. 53).

**III.    Evidence submitted.**

In his motion for summary judgment, (D.E. 31), plaintiff offers the following:

**PX-A**: A copy of the April 13, 2013 IOC from Assistant Warden Monroe to McConnell Unit staff regarding plaintiff and relating that plaintiff has been "awarded a court order granting him the right to grow his beard ¼ inch in length" and instructing the staff that plaintiff is not to be given a disciplinary case for failure to groom his beard nor should staff judge the length of his beard, and that failure to abide by the directive may result in employee disciplinary action (D.E. 1 at 5);

**PX-B**: Step 1 grievance, Grievance No. 2012060190, dated December 6, 2011, where plaintiff appeals a prison disciplinary conviction for failure to groom in which he lost 20 days commissary and recreation privileges as well as three days earned good time credits.  (D.E. 31 at 7-8).  On January 3, 2012, Major Barber upheld the disciplinary conviction.  Id. at 8.

In their response, defendants offer the following:

**DX-A**: Expert Report of Robert Eason, Deputy Director, Prison & Jail Operations, dated August 13, 2013, in which Mr. Eason concludes that allowing prisoners to wear a quarter-inch beard or a longer beard "presents an unacceptable risk to the mission of the agency to provide safe confinement of offenders" (D.E. 37 at 2-29);

**DX-B**: Affidavit of Chaplain Haywood Talib, dated July 10, 2013, in which Chaplain Talib testifies that he became an Imam in 1983, and that the Quran does not mandate the wearing of a beard (D.E. 37-1 at 2).

**IV.    Discussion.**

   **A.    Plaintiff's motion for summary judgment.**

In his summary judgment motion, plaintiff claims that he is entitled to a declaratory judgment that the TDCJ's grooming policy violates RLUIPA.  (D.E. 31). He purports to demonstrate that there is no genuine issue of a material fact on this conclusion by offering the April 13, 2013 IOC directive advising staff to not give him a disciplinary case for failure to groom, (PX-A, D.E. 31 at 5), and evidence that on December 6, 2011, he challenged a disciplinary case for failure to groom, and it was denied.  (PX-B, D.E. 31 at 7-8).

The fact that plaintiff was given disciplinary cases for failure to groom ***prior*** to the Fifth Circuit's April 2, 2013 decision in <u>Garner</u> does not establish that the grooming policy itself violates RLUIPA.  Indeed, there is no dispute that, prior to the <u>Garner</u> case, the TDCJ regularly enforced its grooming policy requiring inmates to be clean-shaven, and the means of enforcement included writing prisoners disciplinary cases for failure to groom. Indeed, in the <u>Garner</u> case, Mr. Garner offered just such evidence to demonstrate how the grooming policy substantially interfered with his exercise of his religious faith. (<u>See</u> <u>Garner v. Livingston,</u> Case No. 2:06-cv-218, D.E. 153, Memorandum Opinion and Order at 3).   Thereafter, the burden shifted to the TDCJ to establish that the TDCJ's clean-shaven policy was essential to the compelling governmental interest of safety.  (<u>Id.</u>, Memorandum Opinion at 4).

To demonstrate that the clean-shaven policy was essential to institutional safety, the TDCJ offered evidence that (1) the identification of prisoners would be hindered by allowing beards to be worn, (2) a beard could be a hiding place for weapons or contraband, and (3) a prison escapee could change his appearance by shaving his beard, rendering recapture more difficult.  (See Garner v. Livingston, Case No. 2:06-cv-218, D.E. 153, Memorandum Opinion and Order at 4).   The defendants also expressed economic concerns, contending that additional expense would be involved in (1) changing the photographs on prison identification cards and (2) making barbers and/or clippers available to trim the beards of Muslim prisoners to the length of one-quarter inch. (Id., Memorandum Opinion and Order at 6).

Upon the evidence presented, the trial court rejected the TDCJ's argument that allowing inmates to wear beards poses a greater safety risk than clean-shaven inmates, and it also rejected the TDCJ's claim that there would be a substantial economic cost if Muslim inmates were permitted to wear a quarter-inch beard.  (See Case No. 2:06-cv-218, D.E. 153, Memorandum Opinion and Order at 6-7).  Judge Hudspeth specifically acknowledged that allowing Garner to wear a beard might likely cause other Muslim inmates at the McConnell Unit to "desire the same benefit," but he found that barber services are already available and accommodating Muslim prisoners would not present a significant expense.   (Id., Memorandum Opinion and Order at 6-7). The trial court concluded that plaintiff had successfully established that the TDCJ's clean-shaven policy imposed an impermissible burden on his religious exercise, and that the policy was not justified by a compelling governmental interest of the State of Texas. (Id., Memorandum

Opinion and Order at 8). Garner was granted a declaratory judgment that the TDCJ's policy prohibiting him from wearing a quarter-inch beard as a religious exercise "is unenforceable against Plaintiff Garner because of the protection afforded such religious exercise" by RLUIPA. Id. at 9.   In addition, the trial court ordered that defendants were "restrained and enjoined from enforcing the TDCJ grooming policy prohibiting Plaintiff Garner from wearing and maintaining a quarter-inch beard as a religious exercise." Id.

On appeal, the Fifth Circuit overruled the TDCJ's objections that allowing an exception to the no-beard rule would have an adverse economic impact on the TDCJ, noting that the trial court had specifically addressed this issue and found that the barber services were already in place and available, and that the TDCJ's evidence of increased costs "was vague and consisted primarily of speculation and conjecture." Garner v. Gutierrez, 713 F.3d 237, 243 (5th Cir. 2013). The Fifth Circuit found further that, on the record presented, the TDCJ had failed to carry its burden to show that the no-beard policy is the least-restrictive means of furthering the compelling governmental interest in security. Garner, 713 F.3d at 247.   Thus, the Fifth Circuit affirmed the trial court's judgment and the relief granted to offender Garner. Id.

The Garner decision effectively holds that the TDCJ grooming policy requiring inmates to be clean-shaven violates RLUIPA, and it effectively affirms the right of a Muslim inmate to wear a quarter-inch beard as a valid exercise of his faith.  As it applies in this case, in response to the Fifth Circuit's decision in Garner, Assistant Warden Monroe advised the McConnell Unit staff that plaintiff has the right to wear a quarter-inch beard and he instructed the staff that plaintiff was not to be given a disciplinary case

for failure to groom, nor was any employee to comment on his beard.  (See PX-A, D.E. 31 at 5).

Plaintiff fails to establish that his receiving of disciplinary cases for failure to groom prior to the Garner decision equates with a finding that the TDCJ's grooming policy violates RLUIPA.[3]  Moreover, defendants have acknowledged the Garner decision and are now allowing plaintiff to exercise his faith by wearing a quarter-inch beard and they are expressly not enforcing the grooming policy as to him.  (See PX-A, D.E. 31 at 4).  Standing alone, the Garner decision itself may effectively be grounds for this Court to find that the TDCJ's clean-shaven policy violates RLUIPA, but the evidence offered by plaintiff to sustain this argument is not.  Thus, it is respectfully recommended that plaintiff's motion for summary judgment be denied without prejudice.  Should plaintiff prevail on his claims, such a declaration regarding TDCJ's grooming policy may be appropriate at that time.

### B.      Defendants' motion to dismiss.

Defendants' move for partial dismissal to: (1) dismiss plaintiff's RLUIPA claims against them in their official capacities as barred by the Eleventh Amendment; (2) dismiss plaintiff's RLUIPA claims against them in their individual capacities; and (3)

---

[3] In response to plaintiff's motion for summary judgment, defendants have offered evidence in an attempt to raise a fact issue as to whether wearing a beard is an essential element of Muslim faith mandated by the Quran (D.E. 36 at 37-1 at 2, DX-B), and also, an expert report not offered in the Garner trial concerning facial hair and institutional safety.  (D.E. 37 at 2-29, DX-B).  Although the Court need not consider this evidence to resolve plaintiff's summary judgment motion, it is respectfully recommended that the TDCJ be cautioned that the judicial system is not inclined to examine and determine whether or not well-accepted expressions of a religious faith, such as wearing a beard, are "required" by the Quran.  In addition, whether the Garner decision is *res judicata* on the issue of beard length and penological safety has not been argued or briefed by the parties, and is therefore not addressed at this time.

dismiss plaintiff's equal protection claims.  (D.E. 34).  Plaintiff objects only to the dismissal of his equal protection claims.  (D.E. 46).

### 1.    Eleventh Amendment.

A suit against a state actor in his or her official capacity for monetary damages is, for all intensive purposes, a suit against the state itself.  Howlett v. Rose, 496 U.S. 356, 365-66 (1990).  The Eleventh Amendment is a jurisdictional bar to a suit for money damages against a state.  Pennhurst State Hosp. v. Halderman, 465 U.S. 89, 100 (1984).  Indeed, the Fifth Circuit has repeatedly held that the Eleventh Amendment bars claims for money damages against TDCJ officers in their official capacities.  See e.g., Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002).  Accordingly, to the extent plaintiff is suing the named defendants in their official capacities for money damages, those claims are barred by the Eleventh Amendment, and therefore, they are properly dismissed.

However, it is well established that the Eleventh Amendment does not bar a plaintiff's claim for prospective injunctive relief.  Ex parte Young, 209 U.S. 123, 159 (1908); Edelman v. Jordan, 415 U.S. 651, 666-68 (1974); Green v. Mansour, 474 U.S. 64, 68 (1985).  For the Ex parte Young exception to apply, the court must examine: (1) the ability of the official to enforce the statute at issue under his statutory or constitutional power, and (2) the demonstrated willingness of the official to enforce the statute. Okpalobi v. Foster, 244 F.3d 405, 425-27 (5th Cir. 2001).  That is, "the necessary fiction of Young requires that the defendant state official be acting, threatening to act, or at least have the ability to act."  Okpalobi, 244 F.3d at 405.  The Fifth Circuit has noted that a

state official cannot be enjoined to act in any way that is beyond his authority to act in the first place.  Id. at 427.

In this case, like in Garner, plaintiff named as defendants those individuals he believes have the power and the authority to amend or ratify TDCJ policy, including the grooming policy, and to enforce court orders concering RLUIPA.  To that end, he named as defendants for purposes of his RLUIPA claims Brad Livingston, TDCJ Executive Director; Eileen Kennedy, as the Region IV coordinator; and Lorie Davis, who was the McConnell Unit warden at the time he filed suit.  (D.E. 1 at 3).  Should plaintiff prevail on his RLUIPA claim and establish that the TDCJ must allow him to wear a quarter-inch beard without further challenge, these defendants, or their successors, would be the necessary parties to enforce any prospective injunctive relief.

### 2.     *RLUIPA and individual capacity.*

To the extent plaintiff has attempted to allege RLUIPA claims against defendants in their individual capacities, he cannot do so.  RLUIPA does not permit a claim against individual defendants in their individual capacities.  See 42 U.S.C. § 2000cc-1.  Indeed, the general rule of RLUIPA provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, …, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).  The statute expressly states that RLUIPA's scope is limited to "a program or activity that receives Federal financial assistance."  Id. § 2000cc-(b)(1).

Moreover, RLUIPA was enacted pursuant to the Spending Clause which can impose liability only upon the recipient of the federal funds.  Sossamon v. Texas, 131 S. Ct. 1651, 1663 (2011).  In this case, the recipient of federal funds is the TDCJ, a state agency.  Thus, because no individual defendant receives Federal financial assistance as that term is used in the statute, plaintiff cannot maintain a RLUIPA claim against a defendant in his or her individual capacity.  See Stewart v. Beach,  701 F.3d 1322, 1333-34 (10th Cir. 2012) (RLUIPA does not permit a claim against individual defendants in their individual capacities).  Thus, defendants are entitled to dismissal of plaintiff's RLUIPA claims against them in their individual capacities.

     *3.*     ***Equal protection.***

In his original complaint, plaintiff sued Captain Benavidez and Sergeant Wysocki alleging that these individuals violated his right to equal protection under the law because they harassed him about his beard or otherwise allowed other officers to harass him in violation of the Fourteenth Amendment.

To establish a Fourteenth Amendment equal protection claim, plaintiff must allege and prove that he received "treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." McFaul v. Valenzuela, 684 F.3d 564, 577 (5th Cir. 2012), citing Taylor v. Johnson, 257 F.3d 470, 473 (5th Cir. 2001).  The Equal Protection Clause does not require "that every

religious sect or group within a prison-- however few in number-- must  have identical facilities or personnel"; it requires only that prison officials afford inmates "reasonable opportunities … to exercise the religious freedom guaranteed by the First and Fourteenth Amendment[s]."  Baranowski v. Hart, 486 F.3d 112, 123 (5th Cir. 2007).

Here, plaintiff has failed to allege, let alone offer any evidence to demonstrate, that similarly situated faiths are afforded superior treatment, or that TDCJ's policies are the product of purposeful discrimination.  Indeed, this Court has pending several lawsuits in which inmates practicing the Native American faith are challenging the TDCJ's grooming policy that prohibits them from growing their hair.[4]  Moreover, in the Garner case, the TDCJ presented expert testimony concerning the grooming policy, and there was simply no evidence that the policy was enacted with a discriminatory purpose toward Muslims or any religious faith.    Garner, 713 F.3d at 244-45.   To the contrary, the purported purpose of the grooming policy was to aid in identification of prisoners and to prevent the secreting of contraband.  Id.

In his response in opposition to defendants' motion for partial dismissal, plaintiff reiterates that, because he sought to wear a beard, defendants "increased" their "harassment and disciplinary actions against him."  (D.E. 46 at 1).  However, prior to the decision in Garner, defendants were merely enforcing the challenged, yet still arguably valid grooming policy requiring inmates to be clean shaven.  More importantly, nothing in plaintiff's allegations suggests that the grooming policy was applied only to Muslim

---

[4] See e.g. Davis & Goodman v. Thaler, et al., Case No. 2:12cv166; Legate v. Stephens, et al., 13cv148; and  Cox v. Stephens, et al., Case No. 13cv151.

prisoners or to plaintiff because he is Muslim.  Thus, plaintiff fails to state a cognizable equal protection claim, and it is respectfully recommended that such claims be dismissed with prejudice.

### C.     Plaintiff's amended motion for a temporary restraining order.

On September 27, 2013, and October 11, 2013, plaintiff filed his amended motions for preliminary injunction.  (D.E. 52, 54).  Plaintiff re-urges his request for an injunction to "prohibit the defendants from enforcing TDCJ's shaving policy to demand plaintiff to be clean shaven." In addition, plaintiff claims that, since the April 13, 2013 IOC allowing him to wear a quarter-inch beard, certain non-defendant prison officers and officials have harassed him for wearing a beard.  Id. at 2.  This harassment includes denying plaintiff lay-in passes for Islamic services, denying maintenance for plumbing repairs in his cell, and denying him library time with another inmate who has a similar lawsuit.  Id. at 2-3.

A party seeking a temporary restraining order or preliminary injunction must establish the following elements: (1) there is a substantial likelihood the party will prevail on the merits; (2) a substantial threat exists that irreparable harm will result if the injunction is not granted; (3) the threatened injury outweighs the threatened harm to the defendants; and (4) the granting of the preliminary injunction will not disserve the public interest.  Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara; 335 F.3d 357, 363 (5th Cir.2003); Affiliated Professional Home Health Care Agency v. Shlala, 164 F.3d 282, 285 (5th Cir. 1999).  Relief should be granted only if the party seeking relief has clearly carried the burden of persuasion as to all four elements.  Karaha Bodas Co., 335 F.3d at 363.  Injunctive relief is an extraordinary remedy which requires

the applicant to unequivocally show the need for its issuance.  <u>See</u>  <u>Valley v. Rapides</u>

<u>Parish School Bd.</u>, 118 F.3d 1047, 1050 (5th Cir. 1997).

       ***1.***      ***Injunctive relief to wear a quarter-inch beard.***

       As to the first factor, given the holding in <u>Garner</u>, plaintiff has established a

likelihood of success on the merits as it concerns his challenge to the TDCJ grooming

policy.  Although RLUIPA claims are generally considered on a case-by-case basis,[5] both

the trial court and the Fifth Circuit found that the TDCJ's no-beard policy in and of itself

violates the exercise of religious freedom of Muslims prisoners, not just the rights of

inmate Garner.  Indeed, both the trial court and the Fifth Circuit anticipated that one of

the consequences of the <u>Garner</u> decision would be an increase in other Muslim prisoners

seeking to exercise the same "benefit."  <u>See</u> <u>Garner</u> 713 F.3d at 243.  In the <u>Garner</u> trial,

the TDCJ had the opportunity to present evidence in support of its position that the no-

beard policy was related to safety, and also that the abolishment of the policy would

create a substantial financial consideration, but it failed to prevail on either of those

arguments.  Moreover, as evident from the April 13, 2013 IOC directive, plaintiff has

been permitted to grow and maintain a quarter-inch beard.  (<u>See</u> D.E. 31 at 4, PX-A).

---

[5] <u>See</u> <u>e.g.</u> <u>Chance v. TDCJ</u>, ___ Fed. Appx. ___, 2013 WL 4517263, *4 (5th Cir. Aug. 27, 2013)
(unpublished).  To the extent the TDCJ is attempting to have each Muslim prisoner demonstrate
the sincerity of his faith in a civil action, the Courts finds that the TDCJ is better equipped and
indeed, already makes such a determination, in authorizing prisoners to attend worship services,
receive special diets, or participate in certain holy days or ceremonies.

Thus, the likelihood of success on the merits weighs in favor of plaintiff as to his request to wear a quarter-inch beard.[6]

As to the second factor, the threat of irreparable harm if the relief is not granted, the <u>Garner</u> decision holds that the no-beards policy places a substantial burden on Muslim prisoners' exercise of their religious beliefs.  Although the harm is not irreparable, in light of that fact that the Fifth Circuit has conclusively found the policy to be a burden, any continued enforcement of it amounts to at least some harm that need not be endured.

Regarding the third factor, <u>Garner</u> rejects that there is any harm to the TDCJ if it is ordered to not enforce the grooming policy as to Muslim inmates seeking to wear a quarter-inch beard.  To the contrary, were the TDCJ to stop such enforcement, it would free itself of present and future lawsuits on this issue.

Finally, granting the requested relief would not disserve the public interest.  Indeed, to force each Muslim inmate to file and pursue separate litigation to stop the TDCJ from continuing to enforce a policy that violates federal law would place an unnecessary burden on judicial resources and time. In addition, the State of Texas would

---

[6] Plaintiff also requests that the Court "explore" the idea of plaintiff being allowed to wear a "fist-length" beard.  (D.E. 52 at 1).  In <u>Garner</u>, the plaintiff acknowledged that the Quran prescribes a "fist-length" beard, but he only insisted on the right to maintain a quarter-inch beard, similar to that allowed to prisoners exempted from the clean-shave rule by virtue of their medical condition.  (See <u>Garner v. Livingston</u>, Case No. 2:06cv218 at D.E. 153, Memorandum Opinion and Order at 3, n 2).  Thus, the <u>Garner</u> decision does not assist plaintiff in obtaining a fist-length beard at this stage in the litigation.

incur additional cost and expense in litigating the issue, and, as in <u>Garner</u>, be responsible for attorney fees and costs of plaintiff's appointed counsel.[7]

Although preliminary injunctive relief is an extraordinary remedy, in light of the <u>Garner</u> decision, it would be contrary to justice to not grant the relief requested by plaintiff to wear a quarter-inch beard.

### 2.    *Other injunctive relief.*

Plaintiff requests a preliminary injunction enjoining certain McConnell Unit officers and officials that are not a party to this lawsuit to be enjoined from harassing or retaliating against him.  He claims that Officers Miles, Dupnik, and Beyer harass him about his beard, and he seeks a court order enforcing the IOC directive.  He claims that Candace Moore has denied him access to the courts by denying him adequate library time, and that Ms. Leignberg has engaged in "retaliatory cell changes."

Taking plaintiff's allegations as true, he is not entitled to a preliminary injunction as to these new charges.  The IOC directive to the McConnell Unit staff referenced by plaintiff expressly prohibits employees from commenting on plaintiff's beard or charging him with a disciplinary case for failure to groom, with the consequence of "employee disciplinary action" if violated.  Thus, defendants have provided plaintiff with not only the authority to wear a beard, but also to wear the beard free from harassment.  If an officer fails to abide by the order, the appropriate course of action is for plaintiff to report

---

[7] In the <u>Garner</u> case, plaintiff's counsel was awarded his attorney fees and costs totaling over $87,000.00.  See Case No. 2:6-cv-218, D.E. 189, Satisfaction of Judgment.

that officer to officials via a grievance or an I-60, not involved the Court in disciplining rogue officers.

Moreover, plaintiff has no free-standing constitutional right to be free from harassment by correctional officers, nor has he suggested that Ms. Moore's conduct has resulted in any actual prejudice or injury. His complaint is that these non-defendants are responding badly to his success in obtaining the right to wear a quarter-inch beard, but the actions complained of do not suggest that plaintiff faces a substantial threat of irreparable harm if injunctive relief is not granted. To the extent plaintiff believes defendants have violated his constitutional rights, the appropriate remedy is to file a civil rights action. Thus, it is respectfully recommended that plaintiff's request for additional injunction relief be denied.

## V.    Recommendation.

For the reasons stated herein, it is respectfully recommended that: (1) plaintiff's motion for summary judgment (D.E. 31) be denied without prejudice; (2) defendant's motion for partial dismissal (D.E. 34) be granted, and that plaintiff's claim for monetary damages against defendants in their official capacities be dismissed as barred; plaintiff's RLUIPA claims against defendants in their individual capacities be dismissed; and plaintiff's equal protection claims be dismissed with prejudice; and (3) plaintiff's

amended motions for a preliminary injunction (D.E. 52, 54) be granted as to his request to wear a quarter-inch beard, but in all other respects be denied.

Respectfully submitted this 17th day of October, 2013.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).